IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-00273-PAB-KLM

INNOVATIER, INC.,

        Plaintiff/Counterclaim Defendant,

v.

CARDXX, INC.,

        Defendant/Counterclaimant,

v.

ROBERT SINGLETON,

        Counterclaim Defendant.

_____

**ORDER**
_____

**ORDER ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

        This matter is before the Court on Plaintiff and Counterclaim Defendant's **Motion for Expedited Entry of Protective Order** [Docket No. 62; Filed October 28, 2008] ("Plaintiff's Motion") and Defendant **Cardxx, Inc.'s Motion for Expedited Entry of Protective Order** [Docket No. 65; Filed November 4, 2008] ("Defendant's Motion). Defendant filed a response in opposition to Plaintiff's Motion [Docket No. 64], and Plaintiff and Counterclaim Defendant filed a joint reply [Docket No. 67].  Plaintiff and Counterclaim Defendant also filed a joint response in opposition to Defendant's Motion [Docket No. 68]. The Court considers the motions to be fully briefed and ripe for resolution.

        IT IS HEREBY **ORDERED** that Plaintiff's Motion [#62] is **DENIED**.

        IT IS HEREBY **ORDERED** that Defendant's Motion [#65] is **GRANTED** for the

reasons set forth below.

To give context to the Court's ruling, the following background is provided. For approximately two and half years, Plaintiff and Defendant were parties to a License Agreement that allowed Plaintiff to manufacture financial transaction cards using certain technology developed by Defendant to embed electronic components therein. When Defendant terminated the License Agreement, Plaintiff sued Defendant for specific performance of a mutual nondisclosure agreement, specific performance of the License Agreement, and breach of the License Agreement. *Plaintiff's Motion* [#62] at 2; *Complaint* [#2]. Defendant filed counterclaims, contending (among other things) that Plaintiff unlawfully converted and misappropriated Defendant's technology for its own benefit. *Defendant's Response* [#64] at 2; *Answer* [#28]. Plaintiff, in response, claims that it did not steal Defendant's technology, but that it has its own "independently-developed proprietary technology." *Plaintiff's Motion* [#62] at 3; *Defendant's Response* [#64] at 3. Defendant asserts that Plaintiff's "so-called 'independently-developed proprietary technology' is a fiction." *Defendant's Response* [#64] at 3. Without judging the merits of either party's claims, the Court resolves the parties' dueling motions.

"The decision to grant a protective order is vested in the . . . court's discretion." *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). The dispute at hand centers around whether the parties should be bound to a Protective Order containing an Attorneys' Eyes Only-Technical designation, which would restrict disclosure of properly marked information to outside counsel and outside consultants only. Plaintiff contends that such a provision is necessary to protect its trade secrets from disclosure to principals of Defendant, which it considers to be a "direct competitor." *Plaintiff's Motion* [#62] at 12. Plaintiff fears that

disclosure of "highly sensitive, proprietary information to the corporate representatives and inventors of a direct competitor will result in irreparable competitive injury to" it. *Id.* at 9.

Defendant disputes that it is in direct competition with Plaintiff and objects to being bound to such a restrictive Protective Order for a variety of reasons, the most important of which is set forth below. As explained by Defendant:

> The only way CardXX can properly prove its assertions [regarding the misappropriation of its technology by Innovatier] is for its in-house designees – individuals who were present and/or are intimately familiar with the information Innovatier learned from CardXX during the License period – to be able to review Innovatier's alleged proprietary research, development, and technical information relating to the claims at issue. Outside counsel and outside consultants, while helpful in this endeavor, were not present when the sensitive information was exchanged between CardXX, Singleton, and Innovatier. Consequently, outside counsel and outside consultants are not equipped to decipher the subtleties between the parties' technologies to the degree that CardXX's in-house designees are. Indeed, for CardXX, its in-house designees are the only people who can adequately evaluate and determine whether the parties' technologies are in fact different, or whether Innovatier misappropriated CardXX's proprietary information in violation of the License Agreement.

*Defendant's Response* [#64] at 12.

I agree. Restricting disclosure of the information as Plaintiff suggests is not only unfair, but impractical. It is unfair because it gives Plaintiff an easier path to proving the existence of its alleged "independently-developed proprietary technology." If Defendant's corporate representatives are prohibited from examining or considering Plaintiff's information, it will be that much harder (and more expensive, since the task will fall to experts) for Defendant to prove that Plaintiff's supposed independent technology "is a fiction." *See Defendant's Response* [#64] at 3. Moreover, building an impermeable wall around this information by means of a Protective Order is not only impractical, but would be crippling to Defendant's efforts to adequately present its case. In order to absolutely

3

prevent Defendant's representatives from having access to the information at issue, they would necessarily be excluded from every discussion of the information essential for presentation of Defendant's legal arguments and evidence to the Court or trier of fact. The implications of Plaintiff's proposal are far reaching and would serve to prohibit Defendant's representative from participating in preparation for key depositions, strategizing about important motions, and attending the trial. The wall around the information would also operate as a wall between Defendant and its counsel. Moreover, the task of policing the wall would, of course, fall eventually to the Court, which would increase the cost of the litigation for both parties and unduly burden the Court.

Most importantly, creating a restriction on disclosure of information that hinders a party in preparation and presentation of its case is simply not warranted by the circumstances presented in this case. In reaching this decision, the Court considers the balancing test to be utilized when determining whether trade secrets should be disclosed. *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325-26 (10th Cir. 1981). That test recognizes that the issue centers around the need to "protect[] trade secrets, on the one hand, and elicit[] facts required for full and fair presentation of a case, on the other hand." *Id.* at 325 n.6. That is precisely the issue here. The Protective Order now proposed by Defendant (and previously agreed to by Plaintiff)[1] balances those interests fairly when considering "the background of the total situation, including . . . the dangers of

---

[1] Although not dispositive to the Court's decision, the Court is further persuaded to accept Defendant's Protective Order given that it is the version previously agreed to by the parties and presented to the Court for execution [Docket Nos. 53 & 53-2]. Indeed, the version of the protective order which Defendant promotes here would have been currently binding on the parties had they included all of the required information in it when it was originally submitted to the Court [Docket No. 55].

abuse, good faith, adequacy of protective measures, and the availability of other means of proof." *Id.*

Although Plaintiff asserts that Defendant's "corporate representatives do not need to see Innovatier's proprietary information in order for Cardxx to prosecute its counterclaims," and that "an independent expert is fully capable of evaluating both technologies," *Reply* [#67] at 8, Plaintiff fails to lend adequate support to these conclusory statements.[2] *See Reed v. Nellcor Puritan Bennett & Mallinckrodt*, 193 F.R.D. 689, 690 (D. Kan. 2000) (noting that the burden of proof lies with the party seeking heightened protection from dissemination). Further, the Court finds that the issues and the relationship between the parties involved are distinguishable from those present in *Netquote, Inc. v. Byrd*, No. 07-cv-00630-DME-MEH, 2007 WL 2438947, at **2-3 (D. Colo. Aug. 23, 2007) (unpublished decision), because Plaintiff's concerns about Defendant's potential misconduct upon disclosure of Plaintiff's alleged trade secrets are speculative at best. In *Netquote*, there was documented misconduct by the party opposing the protective order and there is no such allegation made by Plaintiff here.

IT IS FURTHER **ORDERED** that the Protective Order proposed by Defendant is **accepted** for filing and is entered as an Order of the Court as of the date of this Order.

Dated: November 13, 2008                                      BY THE COURT:

                                                                          s/ Kristen L. Mix
                                                                          U.S. Magistrate Judge
                                                                          Kristen L. Mix

---

[2] Moreover, to the extent that Plaintiff contends that the technology can be sufficiently compared by a review of the parties' public documents, *Reply* [#67] at 8, this assertion is belied by the Affidavit of Counterclaim Defendant Robert Singleton wherein he avers that "[t]he technical information is not readily ascertainable from any known public sources or records." *Affidavit of Robert Singleton* [#62-3] at 2.