IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00273-PAB-KLM

INNOVATIER, INC.,

    Plaintiff/Counterclaim Defendant,

v.

CARDXX, INC.,

    Defendant/Counterclaimant,

v.

ROBERT SINGLETON,

    Counterclaim Defendant.

_____

**ORDER DENYING MOTION FOR RECONSIDERATION**
_____

This matter comes before the Court on defendant CardXX, Inc.'s Corrected Motion for Reconsideration of Order Granting In Part Plaintiff's Motion for Summary Judgment on Count IX [Docket No. 267]. In its motion, CardXX requests the Court reconsider and vacate its order granting plaintiff Innovatier, Inc.'s motion for partial summary judgment and authorizing the escrow agent to return Innovatier's $500,000 escrow deposit to Innovatier ("Order"). *See* December 27, 2010 Order [Docket No. 240]. The basis for the Order was CardXX's failure to demonstrate a triable issue of fact concerning its performance of the condition necessary to release the escrow funds to CardXX, namely delivery of the Gen2 line.

## I. STANDARD OF REVIEW

CardXX invokes the Court's plenary power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir.1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962). A motion for reconsideration "is an extreme remedy to be granted in rare circumstances." *Brumark Corp. v. Samson Resources Corp.,* 57 F.3d 941, 944 (10th Cir. 2005).

> Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.

*Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (internal citations omitted); *United States v. D'Armond,* 80 F. Supp. 2d 1157, 1170 (D. Kan. 1999) ("A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed.") (quotation omitted).

## II. ANALYSIS

### A. Summary Judgment Standard

Innovatier moved for partial summary judgment seeking return of the funds it deposited pursuant to the parties' escrow agreement. Mot. Summ. J. [Docket No. 156]. "[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *see* FED. R. CIV. P. 56(a); *Kannady v.*

*City of Kiowa,* 590 F.3d 1161, 1169 (10th Cir. 2010) (citations omitted) ("[T]he nonmovant may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997).

Thus, CardXX could have defeated Innovatier's motion by demonstrating a genuine issue of material fact as to either an element of Innovatier's claim or an affirmative defense to the claim. A review of CardXX's opposition confirms CardXX attempted the former, though it now claims it succeeded in the latter.

### B. Delivery of the Gen2 Line

In its motion, CardXX cites no new facts or case law subsequent and contradictory to the Order. Rather, the gravamen of CardXX's argument is that the Court misunderstood or misapprehended the basis for CardXX's opposition to the motion for summary judgment. Specifically, CardXX contends:

> CardXX did not in fact argue in its Opposition that it fully delivered the complete Gen2 line to Innovatier as the Escrow Agreement required. Rather, CardXX's position was (and is) that . . . CardXX was prevented from delivering the Gen2 line to Innovatier and thus unable to fully perform pursuant to the Escrow Agreement.

Mot. for Recons. [Docket No. 267] at 8.

The Court finds this argument disingenuous. CardXX clearly and unambiguously identified as a disputed fact Innovatier's assertion that CardXX never delivered the Gen2 line. Opp'n to Mot. Summ. J. [Docket No. 200] at 4, ¶ I (disputing in a separate paragraph Innovatier's statement of undisputed fact); at 3 ("Innovatier contends that it is

3

undisputed that (1) CardXX never delivered to Innovatier a manufacturing line capable of producing 400,000 saleable units per month in accordance with the Escrow Agreement. . . . As explained below, these facts are highly disputed."). And the arguments and evidence CardXX provided in its opposition were couched around this very dispute. Indeed, CardXX identified the delivery of the line in its own heading under the section entitled "Material Facts Asserted by Innovatier That Are in Dispute." *Id*. at 6, Section A.

The second dispute CardXX set forth in its opposition brief confirmed that its primary theory was that CardXX did deliver the Gen2 line. This dispute concerned whether CardXX failed to deliver the line because it "did not have the money to build it." *Id*. at 10-11, Section A.2. CardXX's argument on this issue was limited to challenging the sufficiency of the evidence that allegedly showed the inadequacy of CardXX's funds. Not once did CardXX concede -- even *arguendo* -- that it did not deliver the Gen2 line. CardXX never offered that the *real* reason it did not deliver the line was due to Innovatier's conduct.

Thus, the Court finds it difficult to conclude that CardXX was not contending it delivered the Gen2 line. CardXX carefully framed the issue as a dispute over whether it delivered the line, not over whether it had a valid excuse for non-delivery. The Court's grant of summary judgment was not the result of a misapprehension of CardXX's position but rather of the insufficiency of CardXX's underlying opposition.[1] CardXX

---

[1] CardXX claims that the Court should not have discounted its proof due to the absence of pinpoint citations, but should have allowed "CardXX to resubmit its opposition in accordance with Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.viii. [sic]." Mot. for Recons. [Docket No. 267] at 8 n.4. As the Order states,

chose its argument, which argument proved unsuccessful. Its motion for reconsideration, therefore, is simply an attempt to reframe the issue and assert a new theory around the same foundational facts.

### C. Alternative Defense Theory

Even assuming, as CardXX contends, that it was not disputing its failure to perform under the Escrow Agreement, its opposition brief failed to articulate an alternative theory. In the section concerning the delivery of the line -- the same section that allegedly evinces its excuse for nonperformance -- CardXX articulated its position as follows:

> It is CardXX's position that the extensive engineering effort it undertook in 2004 through 2005 pursuant to the License Agreement culminated into [sic] CardXX's delivery to Innovatier in 2005 of all of the specifications, drawings, and requisite design elements for the entire Gen2 production line capable of manufacturing at least 400,000 saleable units per month. (*See* Ex. 16, 19.) And, as soon as CardXX lost its chief engineer on this project to Innovatier in October 2005, Innovatier took all of the information and knowledge it learned from CardXX and used Meyer to complete the installation of the Gen2 manufacturing line in Lakeland, Florida.

Opp'n to Mot. Summ. J. [Docket No. 200] at 9-10.

This statement left the Court to speculate as to how this constituted "delivery," and if not, what theory CardXX was attempting to develop. While the Court can see within the statement the outline of a prevention defense, the Court also can see the outline of other defenses, including waiver, substitution, and frustration of purpose. *See* Order at 12. But CardXX provided no legal authority to support its unarticulated theory or to hint at the identity of such theory. The Court's unwillingness to accept the task of

---

the evidence was not discounted for the lack of pinpoint citations, but rather for failing to connect such evidence to a cogent legal theory. Order at 4.

choosing one of the alternative defenses, of structuring that defense around the facts, and of supporting that defense with pertinent authority does not constitute grounds for reconsideration.[2] *See Mitchell v. City of Moore,* 218 F.3d 1190, 1199 (10th Cir. 2000) ("the district court bench should not be cast in the role of stage director of the litigation drama -- forced to prod the actors through rehearsals until the proper performance is achieved."); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513-14 (10th Cir. 1990) (stating that the court will not manufacture arguments for the party); *Barcikowski v. Sun Microsystems, Inc.,* 420 F. Supp. 2d 1163, 1179 (D. Colo. 2006) ("It is not this court's task to comb through Plaintiff's [submissions] in an effort to link alleged facts to his arguments or to construct Plaintiff's arguments for him.").

Moreover, to consider CardXX's argument at this point would permit any party to defeat summary judgment with a simple recitation of facts and then later, after seeing which way the Court rules, select a theory on which to structure its motion for reconsideration. This is not how the adversarial system works.

### D. Unclean Hands

CardXX also claims the Order should be vacated because Innovatier is not entitled to the equitable remedy of specific performance due to its alleged improper conduct. Mot. for Recons. [Docket No. 267] at 5-6, 11.

---

[2] Even assuming the Court accepts CardXX new theory as set forth in its motion for reconsideration, CardXX fails to support this position with legal authority identifying the elements under Nevada law and demonstrating the applicability of those elements to the facts of this case. *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) (A "litigant who fails to press a point by supporting it with pertinent authority . . . forfeits the point.") (quotation omitted).

The Court is not persuaded. First, the defense of unclean hands could have been raised, but was not, in CardXX's opposition brief. A "motion for reconsideration is not a license for a losing party's attorney to get a second bite at the apple and make legal arguments that could have been raised before." *Mantle Ranches, Inc. v. U.S. Park Service*, 950 F. Supp. 299, 300 (D. Colo. 1997) (internal quotations and citation omitted).

Second, even assuming it was properly raised, the unclean hands defense is not relevant. As is clear from the Order, the Court construed Innovatier's motion as one seeking cancellation or revocation of the escrow agreement, not as one seeking specific performance of the agreement based on CardXX's breach. Order at 11.

### III. CONCLUSION

Therefore, it is

**ORDERED** that CardXX's Corrected Motion for Reconsideration of Order Granting in Part Plaintiff's Motion for Summary Judgment on Count IX [Docket No. 267] is DENIED.

DATED February 16, 2011.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge