IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00273-PAB-KLM

INNOVATIER, INC.,

    Plaintiff/Counterclaim Defendant,

v.

CARDXX, INC.,

    Defendant/Counterclaimant,

v.

ROBERT SINGLETON,

    Counterclaim Defendant.

_____

**ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT ON THE FIFTH COUNTERCLAIM**
_____

    This matter is before the Court on defendant-counterclaimant CardXX, Inc. ("CardXX")'s motion [Docket No. 272] for summary judgment on its fifth counterclaim, relating to plaintiff Innovatier, Inc.'s ("Innovatier") alleged misappropriation of trade secrets. The motion is fully briefed and ripe for disposition. The Court has original jurisdiction over this action based on diversity jurisdiction under 28 U.S.C. § 1332.

**I. BACKGROUND[1]**

    CardXX has been assigned various United States Patents by the U.S. Patent and Trademark Office ("USPTO"), including No. 7,225,537 ("'537 Patent"). CardXX

---

[1] Unless otherwise indicated, the following facts are not in dispute.

also filed U.S. Application Serial No. 11/661,206 on March 23, 2005 entitled "Method for making advanced smart cards with integrated electronics using isotropic thermoset adhesive materials with high quality exterior surfaces" (the "'206 Application"), which has been allowed by the USPTO. On May 19, 2004, Robert Singleton, the founder and officer of Innovatier, entered into a Mutual Non-Disclosure Agreement ("MNDA") with CardXX, through his then-employer Solicore. Innovatier also entered into an MNDA with CardXX on July 13, 2004. Both MNDAs prohibited disclosure of confidential information detailing CardXX's Reaction Assisted Molded Process ("RAMP") proprietary technology.

According to CardXX, it disclosed to Innovatier several trade secrets pursuant to the MNDAs. These purported trade secrets include the RAMP technology itself, as well as the manufacturing process used by CardXX at its manufacturing facility in Lakeland, Florida. Some of these trade secrets later matured into the '537 Patent and the '206 Application. CardXX claims that Paul Meyer, Director of Engineering at CardXX from August 2003 to October 2005, left CardXX to work at Innovatier and retained a copy of the laptop hard drive he used at CardXX. Meyer then used the information from this hard drive, which contained proprietary information, at Innovatier without CardXX's knowledge or consent. CardXX claims that Innovatier then filed its own patent application, Patent Application Serial No. 11/455,936 (the "'936 Application"), which CardXX claims incorporated CardXX's trade secrets, including the inventive embodiments shown in Figures 10-14 and 1-4 of CardXX's '537 Patent and the '206 Application respectively. The USPTO rejected the '936 Application based on the '537 Patent as prior art. Given that CardXX disclosed this information in its own patent

application, which was granted, this information is now public; however, CardXX claims it may still obtain relief for misappropriation of trade secrets that occurred before those secrets became public through the USPTO's approval of CardXX's '537 Patent.

Innovatier denies that it copied any information from CardXX's '537 Patent or '206 Application. While Innovatier admits that Mr. Meyer left CardXX from Innovatier and retained a copy of his laptop hard drive, it denies that Mr. Meyer used CardXX's trade secrets or proprietary information in his work at Innovatier. Alternatively, Innovatier also claims that, because CardXX disclosed its RAMP technology to the USPTO and to the public through its patent applications, it cannot now claim the benefit of trade secret law.

## II.  STANDARD OF REVIEW

"In diversity cases like this one, . . . [federal courts] are governed by federal law in determining the propriety of . . . summary judgment." *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007) (internal quotations omitted). According to Federal Rule of Civil Procedure 56, a court should grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986). A movant who bears the burden at trial must submit evidence to establish every essential element of its claim. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). The nonmoving party, however, may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(c).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. ANALYSIS

CardXX moves for summary judgment on its counterclaim for misappropriation of trade secrets. The parties agree that Colorado law governs CardXX's trade secrets claim and that the elements of a trade secret misappropriation claim are: "(i) that [CardXX] possessed a valid trade secret, (ii) that the trade secret was disclosed or used without consent, and (iii) that [Innovatier] knew, or should have known, that the trade secret was acquired by improper means." *Gates Rubber Co. v. Bando Chem. Indus, Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993). The Colorado Uniform Trade Secrets Act ("CUTSA") defines a trade secret as

> scientific or technical information, design, process, procedure, formula, improvement . . . or other information relating to any business or profession which is secret and of value. To be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

4

Colo. Rev. Stat. § 7-74-102(4). "Trade-secret status is a question of fact." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003) (citing *Colo. Supply Co. v. Stewart*, 797 P.2d 1303, 1306 (Colo. App. 1990)). Factors considered in determining the existence of a trade secret include:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Id.* (quoting *Colo. Supply Co. v. Stewart*, 797 P.2d at 1306). In determining the existence of trade secrets, courts do not look at individual components of a process, but the entirety of the process, as "a trade secret can include a system where the elements are in the public domain, but there has been accomplished an effective, successful and valuable integration of the public domain elements and the trade secret gave the claimant a competitive advantage which is protected from misappropriation." *Rivendell Forest Prods., Ltd. v. Georgia-Pacific Corp.*, 28 F.3d 1042, 1046 (10th Cir. 1994).

The first question for the Court is whether CardXX possessed valid trade secrets. The Court understands CardXX's motion to claim that the RAMP proprietary technology along with a variety of processes and know-how related to its development are, or were, trade secrets. In its prior order, the Court construed the term "RAMP Proprietary Technology" in the parties' Licensing Agreement as CardXX's "proprietary chemistry and related processes known as Reaction Assisted Molded Process (RAMP)." *See* Docket No. 241 at 13. As for the "proprietary chemistry" component of the technology,

CardXX maintains that, although it does not own the polyurethane chemical formulation used in the RAMP process, it does "own the confidential know-how for determining viable formulations for use with the RAMP Proprietary Technology through the trial and error process of research, testing, and development conducted by CardXX." *See* Docket No. 300 at 4.  As for the components of the RAMP itself, CardXX laid out the essential components of this process in its response to Innovatier's interrogatory No. 9. *See* Docket No. 300-2 at 3.  CardXX has also alleged that a document related to RAMP titled "Current Card Operating Parameters," which includes more specific manufacturing specifications and lists "Key Product/Process Requirements and Concerns," includes trade secrets.  *See* Docket No. 216 at 2 (filed under seal) ("Process Parameter Documents").  The specific processes described in the answer to Innovatier's interrogatory and the Process Parameter Documents appear to constitute the universe of trade secrets for which CardXX seeks protection in its fifth counterclaim.

These alleged trade secrets fall into two categories: information related to the RAMP technology that CardXX included in its patent applications and information related to the RAMP technology that CardXX did not include in those applications.  *See* Docket No. 300-2 at 3 (RAMP technology "includes, but is not limited to" the processes set forth in CardXX's patent and pending patent application).  As for the first category, the Court finds that the USPTO's approval of the application that matured into the '537 Patent and its allowance of the '206 Application is sufficient evidence that the material included in these applications was not widely known in the industry at the time, thereby satisfying the factors relevant to the existence of a trade secret related to the novelty and value of the information.  *See Harvey Barnett*, 338 F.3d at 1129.  CardXX has also

demonstrated that it protected this information by entering into MNDAs with Singleton and Innovatier. *See id.*

In response, Innovatier argues that this information cannot be a trade secret because CardXX disclosed it in its patent applications. This argument fails. The fact that CardXX included material in applications to the USPTO does not diminish the secrecy of the material during the period before the USPTO approved the patent or published the application. Material in a patent application remains secret unless and until it is published by the USPTO. *See* Roger M. Milgrim & Eric E. Bensen, Milgrim on Trade Secrets § 1.06 ("Patent applications filed with the United States Patent Office are kept in confidence until they are published"). The USPTO does not generally publish applications until 18 months after they are submitted. *See* 35 U.S.C. 122(b)(1)(A) (applications are generally published 18 months after filing); *cf. Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, LLC*, 637 F.3d 604, 611-12 (5th Cir. 2011) (information contained in *published* patent application no longer secret). Based on the timeline of CardXX's submissions to the USPTO, the content of the '537 Patent and the '206 Application were still confidential when Innovatier filed its '936 Application. Therefore, the Court concludes that the materials included in CardXX's '537 Patent and the '206 Application related to the specifics of the RAMP technology were still trade secrets until the '537 Patent and the '206 Application became public.

Next, the Court looks to whether this information was misappropriated by Innovatier with knowledge that it was acquired by improper means. CardXX presents evidence that Innovatier incorporated the inventive embodiments shown in Figures 10-14 and 1-4 of the CardXX '537 Patent and the '206 Application, respectively, into the

'936 Application. *See* Docket No. 272-2 at 6-8. In response, Innovatier denies this fact, but only presents Robert Singleton's declaration to contradict it. *See* Docket No. 279 at 2. Mr. Singleton's declaration asserts that he did not "adopt, copy or incorporate" any portions of the '537 Patent or '206 Application into his '936 Application, nor did anyone else associated with the filing of the '936 Application. *See* Docket No. 279-7 at 1. This declaration does not present any facts on which the Court could conclude that it is genuinely disputed that the '936 Application did not incorporate the figures from the '537 Patent and '206 Application. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge" and "set out facts that would be admissible in evidence."). Mr. Singleton's declaration merely states that CardXX's evidence is not true without introducing any facts to the contrary. Thus, the Court finds that there is no genuine issue of material fact on the issue of whether Innovatier knowingly misappropriated CardXX's trade secrets in its '936 Application and that CardXX is entitled to judgment as a matter of law on its fifth counterclaim insofar as it is based on trade secrets included in CardXX's '537 Patent and '206 Application.

In so finding, the Court rejects Innovatier's argument that CardXX cannot seek a remedy for misappropriation of trade secrets that have subsequently become public. In order to prevail on its trade secret claim, CardXX need only show that it possessed a trade secret at the time, which Innovatier disclosed or used without consent, knowing that it was obtained by improper means. *See Gates Rubber Co. v. Bando Chem. Indus, Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993). There is no dispute of material fact on any of these elements related to the information in the '537 Patent and '206 Application.

However, the Court finds that CardXX has not sufficiently demonstrated the existence of trade secrets outside these patent applications that were misappropriated by Innovatier. The approval of the '537 Patent and the allowance of the '206 Application allow a jury to infer that the content included in the related patent applications was novel in the industry and valuable. But CardXX has not presented evidence related to the bulk of the trade secret factors for its other alleged trade secrets, beyond its efforts to keep this information secret by obtaining MNDAs and labeling documents as confidential. *See Colo. Supply Co.*, 797 P.2d at 1306. CardXX's motion presents no evidence regarding the extent to which this information is known outside the industry, the extent to which it is known inside the industry, the value to CardXX in having the information as against competitors, the amount of effort or money CardXX expended in developing the technology, or the amount of time and expense it would take for competitors to develop it. *See id.* Therefore, the Court will deny CardXX's motion for summary judgment insofar as it seeks judgment on its fifth counterclaim related to trade secrets not included in the '537 Patent and '206 Application.

For the foregoing reasons, it is

**ORDERED** that CardXX's Corrected Motion for Summary Judgment on the Fifth Counterclaim of the Third Amended Counterclaim and Jury Demand [Docket No. 272] is **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that the parties shall submit simultaneous supplemental briefs on the issue of relief by September 1, 2011. The supplemental briefs shall be limited to the narrow issue of appropriate relief resulting from the Court's findings herein and shall not

exceed 5 pages.

DATED August 1, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge