IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00273-PAB-KLM

INNOVATIER, INC.,

    Plaintiff/Counterclaim Defendant,

v.

CARDXX, INC.,

    Defendant/Counterclaimant,

v.

ROBERT SINGLETON,

    Counterclaim Defendant.

_____

**ORDER REGARDING CARDXX'S MOTION TO
PRECLUDE LAY OPINION TESTIMONY**
_____

This matter is before the Court on the Motion to Preclude Innovatier from Presenting Opinion Testimony by Lay Witnesses Relating to Scientific, Technical, or Other Specialized Knowledge [Docket No. 207] of Defendant-Counterclaimant CardXX, Inc. ("CardXX")[1], and the supplemental briefs submitted by the parties discussing how the Tenth Circuit's opinion in *James River Ins. Co. v. Rapid Funding, LLC,* 648 F.3d 1134, 2011 WL 3211505 (10th Cir. July 29, 2011), affects the admissibility of Mr. Singleton's proposed testimony [Docket Nos. 322, 323]. The Court has original jurisdiction over this action based on diversity jurisdiction under 28 U.S.C. § 1332.

---

[1]CardXX stated in its Reply that the parties have resolved their dispute concerning the testimony of Mr. Keim. Docket No. 236 at 2. As such, the Court will limit its consideration of CardXX's objections to the testimony of Mr. Singleton.

I. **BACKGROUND**

CardXX specializes in the development and manufacturing of ultra-thin cards with embedded electronic components called "smart cards." Docket No. 235 at 2, ¶ 7. CardXX has been assigned several patents in connection with its Reaction Assisted Molded Process ("RAMP") technology used in these smart cards. Docket No. 235 at 2-3, ¶ 9. On May 19, 2004, CardXX explored the possibility of sub-licensing the RAMP technology to Solicore, Inc. Docket No. 235 at 4, ¶ 13. Solicore's representative in the negotiations with CardXX was its employee Robert Singleton. As a result of these negotiations, CardXX entered into a Mutual Non-Disclosure Agreement with Solicore. *Id*. Afterwards, Mr. Singleton toured CardXX's facilities in Englewood, Colorado. Docket No. 145 at 3, ¶ 10. In July 2004, Mr. Singleton left Solicore and founded Innovatier, Inc. ("Innovatier"). Docket No. 145 at 4, ¶ 13. Subsequently, CardXX and Innovatier executed a Mutual Non-Disclosure Agreement ("Innovatier MNDA") on July 13, 2004. Docket No. 235 at 4, ¶¶ 14-15.

After signing the Innovatier MNDA, CardXX and Innovatier exchanged trade secrets, signed a License Agreement, and attempted to make commercially acceptable smart cards on a mass scale. Docket No. 145 at 4-5, ¶¶ 15-17. Within a short period of time, the business relationship between CardXX and Innovatier deteriorated and this lawsuit followed. Docket No. 145 at 9, ¶ 35. The parties have filed cross claims for misappropriation of trade secrets, breach of a License Agreement and MNDAs, unfair competition, and tortious interference with business relationships. Docket No. 145, at Counts I-IV, X-XIII; Docket No. 235 at Countercl. Nos. 1-7.

During discovery, CardXX deposed Mr. Singleton in his individual capacity and as a Fed. R. Civ. P. 30(b)(6) designee for Innovatier.  Docket No. 207 at 4.  Based on Mr. Singleton's deposition testimony, CardXX believes that Innovatier will attempt to elicit expert testimony from him.  *Id*.  Accordingly, CardXX filed a motion to exclude Mr. Singleton's testimony because he was not designated as an expert witness [Docket No. 207].

In response, Innovatier argues that Mr. Singleton's proposed testimony is not based on scientific or specialized knowledge.  Rather, Innovatier asserts that Singleton will base his testimony on personal observations and experiences as an inventor.  Docket No. 230 at 7.  Innovatier claims that Mr. Singleton will testify about nine different topics: (1) his development of the Innovatier process; (2) Mr. Singleton's understanding of CardXX's RAMP process; (3) when and how CardXX's RAMP process was communicated to him; (4) how the parties' processes differ; (5) his knowledge of CardXX's RAMP process prior to CardXX's disclosures to Innovatier; (6) how he acquired such knowledge from publicly available information; (7) his prior experience using the components that CardXX claims are confidential or trade secrets; (8) the various patents that he filed concerning the process Innovatier developed; and (9) his review of CardXX's patents prior to filing patents for Innovatier.  Docket No. 230 at 7.

In a previous Order [Docket No. 242], the Court reserved ruling on the motion and ordered Innovatier to file a supplemental brief regarding Mr. Singleton's testimony as it relates to issues #2, #4, and #9.  Docket No. 242 at 5.  The Tenth Circuit later issued its opinion in *James River,* analyzing the relationship between Rule 701 and Rule 702 of the Federal Rules of Evidence.  The Court ordered [Docket No. 318] the

parties to file supplemental briefs discussing *James River's* effect on the admissibility of Mr. Singleton's testimony.

In their supplemental briefs, both parties assert that *James River* supports their earlier positions. See Docket Nos. 322, 323. Innovatier argues that Mr. Singleton's proffered testimony is admissible because it does not rely on any "sort of sophisticated economic model[s] or calculations" as he will testify simply to "what he observed [of] the RAMP technology." Docket No. 323 at. 4.  On the other hand, CardXX argues that Mr. Singleton's testimony falls within Rule 701's prohibition because it relies on his technical judgments and professional experience. Docket No. 322 at 3.

## II. ANALYSIS

### A.  Rule 701 and *James River*

Rule 701 states as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

In *James River,* the Tenth Circuit held that land valuation testimony of a property owner was inadmissible under Rule 701 because it relied on technical or specialized knowledge. *James River*, 2011 WL 3211505, at *7. The property that was being valued was a dilapidated building owned by Rapid Funding, LLC and insured by James River, an Ohio based insurance company. *Id.* at *2. This building was destroyed by an arson-caused fire. After James River denied Rapid Funding's insurance claim, Rapid Funding filed suit seeking a declaratory judgment. *Id*.

In the district court, James River objected to proposed testimony of Rapid Funding's principal, Andrew Miller. *See James River Ins. Co. v. Rapid Funding, LLC*, No. 07-cv-01146-CMA-BNB, 2009 WL 481688, at *7 (D. Colo. Feb. 24, 2009). Mr. Miller estimated the pre-fire value of the destroyed property based on the building's depreciation and the cost of rehabilitation. *Id.* at *8. The district court found that Mr. Miller's testimony was inadmissible as expert testimony under Rule 702 because it was unreliable. *Id.* at *9-12. Nevertheless, the district court allowed Mr. Miller's testimony, subject to a limiting instruction, as lay opinion under Rule 701. *James River*, 2011 WL 3211505, at *4.

The Tenth Circuit reversed, holding that Mr. Miller's testimony was "expert opinion testimony based on technical or specialized knowledge and therefore inadmissible under Rule 701(c)." *Id.* at *7. The Tenth Circuit based this ruling on four conclusions: (1) Mr. Miller's opinions and the judgments he used to make them required professional experience beyond the scope of a lay opinion; (2) Mr. Miller's previous professional experience in real estate placed his testimony in the realm of expert opinion because he was better situated to calculate depreciation compared to other property owners; (3) the testimony relied on the extensive analysis and conclusions of a 1,525-page report compiled by an outside expert; and (4) the Federal Rules of Evidence generally consider landowner valuation testimony to be expert opinion. *Id*.

Two other Tenth Circuit cases have a potential bearing on this case and were discussed in *James River*. In *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114 (10th

Cir. 2005), the Tenth Circuit held that, under Rule 701(c), a witness could testify about the result of a simple mathematical equation because anyone with a grade-school education could understand the testimony. *Id.* at 1124.

By contrast, in *LifeWise Master Funding v. Telebank*, 374 F.3d 917 (10th Cir. 2004), the Tenth Circuit held that, under Rule 701, the CEO of plaintiff could not testify about an economic damages model that utilized S-curves, rolling averages, and compounded growth rates. *Id*. at 929-30. After noting that the witness was not an expert in any of these subjects under Rule 702, the court stated "a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." *Id.* at 929 (quoting *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996)). Because the CEO's testimony involved "technical, specialized subjects," Rule 701 precluded it.

Thus, regardless of whether Mr. Singleton has personal knowledge under Rule 701(a), his proposed testimony must be excluded if it involves opinions or inferences about "scientific, technical, or other specialized knowledge" under Rule 701(c).

### B. Mr. Singleton's Proposed Testimony

Neither Innovatier nor Mr. Singleton has designated Mr. Singleton as an expert witness, and Mr. Singleton has not submitted an expert report. Since Mr. Singleton was not disclosed as an expert, any testimony of Mr. Singleton falling within the ambit of Rule 702 must be excluded. The dispute, therefore, centers upon whether Mr. Singleton's testimony is lay opinion testimony, expert testimony, or a combination of both.

The Court will first review those topics for which the Court ordered supplemental briefing by Innovatier, namely, topic #2 – Mr. Singleton's understanding of CardXX's RAMP process; topic #4 – how the CardXX and Innovatier processes differ; and topic #9 – Mr. Singleton's review of CardXX's patents prior to filing patents for Innovatier.

### 1. Topic #2: Mr. Singleton's Understanding of CardXX's RAMP Process

Mr. Singleton's testimony regarding the CardXX RAMP process is two-pronged. First, he proposes to testify about the process through knowledge acquired during conversations with Paul Meyer, a former CardXX employee. Docket No. 245 at 2. Based on these conversations, Mr. Singleton proffers that the RAMP process is a method of packaging electronics "in small form factors wherein the electronics are placed on glue-dot pedestals between two graphic overlays . . . encapsulated by a polymeric material injected . . . using a reaction injection molding process." Docket No. 245 at 1. Second, Mr. Singleton offers testimony that is centered around his visit to CardXX's Colorado facilities, where he was shown "only a hodge-podge of standard, off-the-shelf, antiquated equipment that did not appear to be customized or specially designed in any way." *Id*. at 2.

The Court concludes that testimony about Mr. Singleton's understanding of CardXX's RAMP is inadmissible under Rule 701. First, the subject matter of this testimony is clearly "scientific, technical, or other specialized knowledge," Fed. R. Evid. 701(c), that is not understandable by an ordinary person. Morever, Mr. Singleton's "understanding" of the RAMP process is not proposed as merely recounting Mr. Meyer's statements to him, which in some circumstances may be admissible, but rather

will consist of inferences and opinions of the RAMP process that Mr. Singleton formed after talking to Mr. Meyer.

Second, such testimony falls within the scope of Rule 702 because such testimony necessarily entails opinions and inferences derived from Mr. Singleton's specialized experience. Innovatier admits that "Mr. Singleton's understanding of the CardXX RAMP Process was also formed through Mr. Singleton's extensive experience in all aspects of the packaging industry." Docket No. 245 at 2. Mr. Singleton does not claim any personal or particularized knowledge of the RAMP process prior to his discussions with Mr. Meyer. *See Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc.*, 533 F.3d 555, 561 (7th Cir. 2008) ("Taylor's valuation attempt was based on his special experience in the tire industry, not on his personal knowledge of the goods in question; therefore, it falls within the purview of Rule 702."). Moreover, Mr. Singleton does not suggest that he conducted an independent review of this information; instead, he asserts that the testimony will reflect what he "learned from Paul Meyer." Docket No. 245 at 2. While experts are allowed to give testimony outside of their personal experiences and observations, lay witnesses are not. *Von der Ruhr v. Immtech Int'l Inc.,* 570 F.3d 858, 864 (7th Cir. 2009). Because Mr. Singleton's proffered testimony is not based on his personal knowledge of the CardXX process, he will necessarily have to rely on his professional experience to make judgments about Mr. Meyer's statements. However, any "knowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." *James River,* 2011 WL 3211505, at *8 (quoting *United States v. Smith*, 640 F.3d 358,

365 (D.C. Cir. 2011)).  Since Mr. Singleton was not endorsed as an expert, this testimony is excluded.

### 2. Topic #4: How the CardXX and Innovatier Processes Differ

Innovatier's supplemental brief sets out Mr. Singleton's description of the differences between Innovatier's process and the CardXX RAMP process.  *See* Docket No. 245 at 3-4.  Mr. Singleton describes a manufacturing process that would not be understandable or obvious to an ordinary person.  For example, Innovatier's supplemental brief describes part of its process as follows: "the reaction injection molding unit engages the specially designed nozzle and discharges a pre-determined quantity of Innovatier's own proprietary chemical polyol/isocyante formulation (polyurethane), which is directed through the specially-designed nozzle and in between the two overlays." *Id*. at 3.  Of course, to the extent that Mr. Singleton describes Innovatier's manufacturing process, based on his personal knowledge of it, his testimony would not appear to consist of opinions or inferences.  However, his proposed comparison of the CardXX RAMP process to the Innovatier process necessarily entails opinion testimony involving specialized knowledge.  Thus, Mr. Singleton's testimony is excluded under Rule 701 and because he was not endorsed as an expert.

### 3. Topic #9: Mr. Singleton's Review of the CardXX Patents Prior to Filing the Innovatier Patents

Mr. Singleton seeks to testify about his review of the CardXX patents after his initial discussion with Paul Meyer.  Docket No. 245 at 4.  Mr. Singleton's proffered testimony explains how he reviewed the prior art in order to determine the scope of the

CardXX patents. *Id*. For example, Innovatier's supplemental brief states that "[b]ased on [his prior art research] and the review of the CardXX patents, Mr. Singleton concluded that CardXX could not own the entire process. . . ." Docket No. 245 at 4. Like the testimony discussed under topic #2, Mr. Singleton's comparison of CardXX's patents to the prior art consists of his opinions about scientific, technical, and specialized knowledge that is excluded by Rule 701(c).

As noted in the Court's previous order [Docket No. 242], topics #1, #3, #5, #6, #7, and #8 appear to involve Mr. Singleton's description of facts as opposed to his statement of opinions or inferences. Assuming this is true, it is admissible as being outside of either Rule 701 or Rule 702. However, to the extent Mr. Singleton attempts to offer opinions or inferences based upon his specialized knowledge, it is subject to exclusion as discussed earlier in this order.

### III.  CONCLUSION

Accordingly, it is

**ORDERED** that CardXX's Motion to Preclude Innovatier from Presenting Opinion Testimony by Lay Witnesses Relating to Scientific, Technical, or Other Specialized Knowledge [Docket No. 207] is **DENIED** in part and **GRANTED** in part. Mr. Singleton may testify as to topics #1, #3, #5, #6, #7, and #8 as listed in Docket No. 230 at 7. CardXX's motion is granted as to topics #2, #4, and #9.

DATED September 29, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge