IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00273-PAB-KLM

INNOVATIER, INC.,

    Plaintiff/Counterclaim Defendant,

v.

CARDXX, INC.,

    Defendant/Counterclaimant,

v.

ROBERT SINGLETON,

    Counterclaim Defendant.

---

## ORDER DENYING MOTION FOR RECONSIDERATION

---

This matter is before the Court on Innovatier's Motion for Clarification or Reconsideration of Order Granting in Part and Denying in Part CardXX's Motion for Summary Judgment on its Fifth Counterclaim [Docket No. 321] filed by plaintiff-counterclaim defendant Innovatier, Inc. and counterclaim defendant Robert Singleton (collectively "Innovatier"). In its motion, Innovatier requests that the Court reconsider and clarify its order granting defendant CardXX, Inc.'s ("CardXX") motion for summary judgment. The facts relevant to this motion were outlined in the Court's August 1, 2011 Order [Docket No. 316] and are incorporated by reference.

**I. STANDARD OF REVIEW**

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, *see Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858, 861 (10th Cir. 1995), and, where, as here, a party files a motion for reconsideration prior to the entry of judgment, Rules 59(e) and 60(b) do not apply. *Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962). Instead, the motion falls within a court's plenary power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp.*, 313 F.2d at 92. However, in order to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders. *See, e.g.*, *Montano v. Chao*, No. 07-cv-00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to the reconsideration of interlocutory order); *United Fire & Cas. Co. v. McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at *1-2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the Duty-to-Defend Order); *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (applying law of the case doctrine to motion for reconsideration of interlocutory order). Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error.

## II. ANALYSIS

### A. Summary Judgment Standard

"[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *see* Fed. R. Civ. P. 56(a); *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citations omitted) ("[T]he nonmovant may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997).

CardXX moved for summary judgment seeking a determination that Innovatier knowingly misappropriated CardXX's trade secrets contained within U.S. Patent No. 7,225,537 ("'537 patent") and Patent Application Serial No. 11/661,206 ("'206 Application"). *See* Docket No. 272. The Court partially granted CardXX's summary judgment motion because of Innovatier's failure to demonstrate a triable issue of fact regarding misappropriation of CardXX's trade secrets related to the Reaction Assisted Molded Process ("RAMP") contained within the '537 patent and the '206 Application. *See* Docket No. 316. Innovatier argues that the Court should reconsider its ruling because the Court: (1) committed clear error in applying governing law; (2) misapprehended facts related to the information contained within the patents; and (3) failed to delineate specifically what trade secrets were contained in the '537 patent and

3

the '206 Application. For the Court to grant this request, Innovatier must either explain why the Court's previous ruling was based on a clear error of law or provide newly discovered evidence.

### B.   Clear Error of Law

Innovatier argues that the Court committed clear error because, although the Court cited the *Rivendell*[1] factors, the Court failed to specifically apply the facts of the case to each factor. Innovatier contends that the Court's reliance on the allowance of the '537 patent and the '206 Application by the Patent and Trademark Office ("PTO") is inconsistent with governing law. Innovatier claims that the Court's current ruling "creates new law standing for the proposition that the PTO's allowance of a patent application, standing alone, satisfies all the *Rivendell* factors." Docket No. 321 at 3, n. 2.

The Court finds Innovatier's argument unconvincing. First, the Court correctly applied the *Rivendell* factors to determine that CardXX's proprietary technology qualified as trade secrets. *See* Docket No. 316 at 5-7. The Court found that the PTO's

---

[1] The *Rivendell* factors are:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Rivendell Forest Prods., Ltd. v. Georgia Pacific Corp.*, 28 F.3d 1042, 1044 (10th Cir. 1994).

approval of the application that matured into the '537 patent and the allowance of the '206 Application was sufficient evidence to prove that the material contained in the patents was not widely known in the industry at the time. *Id*. Additionally, the Court found that CardXX's desire to protect its proprietary information by securing a patent emphasized the value of the information. *Id*. Further, the Court found that CardXX took appropriate steps to protect the proprietary information by entering into Mutual Nondisclosure Agreements ("MDNAs") with Mr. Singleton and Innovatier, Inc. *Id*. at 7. Finally, to the extent that Innovatier claims the Court was required to provide a thorough discussion of every *Rivendell* factor, this assertion is erroneous. *See Rivendell,* 28 F.3d at 1044 ("Although an exact definition of a trade secret may not be possible, the following factors *may* be considered") (quoting *Colorado Supply Co. v. Stewart*, 797 P.2d 1303, 1306 (Colo. App. 1990)) (emphasis added). Therefore, Innovatier's argument that the Court's ruling was based on a clear error of law is incorrect.

### C.  Misapprehension of Facts

Innovatier argues that CardXX's RAMP technology was publicly disclosed in earlier CardXX patents and, as such, cannot be protected as trade secrets. Docket No. 321 at 4. Additionally, Innovatier claims that the prosecution histories of the '206 Application and the '537 patent show that both patents were rejected as obvious because of previous CardXX patents. *Id*. Innovatier contends that the PTO's rejection means that the materials contained in the inventions could not qualify as trade secrets. Docket No. 321 at 6. Specifically, Innovatier argues that CardXX's agreement to file a

terminal disclaimer for the '537 patent is conclusive proof that the '537 patent is indistinguishable from prior CardXX patents. *Id*.

### *1. CardXX's Publicly Disclosed RAMP Technology*

In the summary judgment briefing, CardXX did not dispute the fact that certain claimed steps in the '537 patent and the '206 Application were publicly disclosed. Docket No. 300 at 4. On the contrary, CardXX claimed that, although it did not own the polyurethane chemical formulation, it did own the "confidential know-how for determining viable formulations for use with the RAMP Proprietary Technology through the trial and error process." *Id*. CardXX argued that it was not the individual components, but the "entirety of the information" contained in the '537 patent and the '206 Application that constituted protectable trade secrets. Docket No. 329 at 14.

In its motion for reconsideration, Innovatier does not provide evidence showing that the entirety of the information contained in the '537 patent and the '206 Application was publicly available. Additionally, Innovatier does not rebut CardXX's contention that the '537 patent and the '206 Application contained improvements when compared to other CardXX patents. Innovatier's argument relies solely on the fact that CardXX had similar claims in other publicly disclosed patents. However, it is well established that information can be a trade secret, notwithstanding the fact that some of its components are well known. *See Rivendell*, 28 F.3d at 1045. "[A] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Id*. Therefore, because

Innovatier has failed to provide any evidence, let alone newly discovered evidence, to support the notion that the Court's previous ruling misapprehended facts related to CardXX's RAMP technology, Innovatier's argument fails.

### 2. Terminal Disclaimer of the '537 Patent

Innovatier claims that, because CardXX overcame the rejection of the '537 patent by filing a terminal disclaimer[2], it is conclusive proof that the '537 patent does not contain trade secrets. Docket No. 321 at 6. Innovatier asserts that, because the '537 patent was rejected on the grounds of "nonstatutory obviousness-type double patenting," it is "not patentably distinct" from CardXX's U.S. Patent No. 6,241,153 ("'153 patent"). *Id*. Additionally, Innovatier contends that the Court cannot rely on the fact that the PTO granted the '537 patent to conclude that "the material included in [this application] was not widely known in the industry at the time." Docket No. 338 at 3.

Innovatier's argument is an attempt to equate a terminal disclaimer to a finding of obviousness. However, the filing of a terminal disclaimer serves the statutory function of removing the rejection of double patenting and raises neither presumption nor estoppel on the merits of the rejection. *Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 874 (Fed. Cir. 1991). Thus, a terminal disclaimer is not an admission that a later-filed invention is obvious, and a terminal disclaimer cannot overcome an objection or rejection of a patent based on obviousness grounds. *Id*.

---

[2]A terminal disclaimer allows the owner of two separate patents to voluntarily limit the statutory protection of the later-issued patent to the term of the original patent in order to avoid an objection of obviousness-type double patenting (i.e the improper extension of patent protection beyond the statutory term by claiming a slight variant). *Boehringer Ingelheim Int'l GMBH v. Barr Labs., Inc.*, 592 F.3d 1340, 1346 (Fed. Cir. 2010).

Moreover, because the presumption of validity attaches to each claim of a patent issued by the PTO, this presumption applies to the '537 patent. *See* 35 U.S.C. § 282.

Thus, for Innovatier's argument to succeed, it would have to show more than CardXX's agreement to file a terminal disclaimer. Innovatier would have to provide evidence that the PTO conclusively found that the '537 patent was obviated by previous patents. This, it has not done. Innovatier's failure is further compounded by the lack of evidence to rebut the presumption of validity afforded to issued patents. Therefore, in light of these facts, Innovatier's argument is unpersuasive. The Court's reliance on the PTO's allowance of the '537 patent to conclude that the improvements to the RAMP technology were not widely known in the industry was not erroneous.[3]

### 3. Prosecution History of the '206 Application

Finally, Innovatier claims that the PTO's "rejection of the 206 Application as anticipated and obvious in light of [U.S. Patent No. 6,256,873 ("'873 patent")] is conclusive" evidence that the information within the patent was publicly available as early as 2001. Docket No. 321 at 8. However, this argument ignores the subsequent prosecution history of the '206 Application. The Notice of Allowance [Docket No. 272-6] for the '206 Application unambiguously states that the '206 Application was granted because it contained information not taught or suggested by the '873 patent. *See* Docket No. 272-6 at 6, ¶ 2 (explaining why the '206 application is not taught or

---

[3] This is further supported by the fact that, with respect to CardXX's RAMP process as a whole, only three entities had used this information commercially at the time: CardXX, its licensee Identita, and Innovatier. Docket No. 300 at 9.

suggested by the '873 patent). Accordingly, the Court did not misapprehend facts related to the '206 Application.

Under any standard, Innovatier has failed to provide sufficient reasons for the Court to reconsider its prior ruling. Therefore, Innovatier's motion will be denied.

### D.  Clarification of Summary Judgment Motion

Innovatier requests, in the alternative, that the Court clarify the previous ruling to delineate exactly what information constitutes CardXX's trade secrets. Docket No. 321 at 9. In the August 1, 2011 Order, the Court found that "the materials included in CardXX's '537 Patent and the '206 Application related to the specifics of the RAMP technology were still trade secrets" up to the date the patents were publicly disclosed. Docket No. 316 at 7. This information has been coined by CardXX as the "'flush mounted' inventive embodiments shown in Figures 10-14 and 1-4 of the '537 Patent and the '206 Application." Docket No. 329 at 5. Specifically, the trade secrets relate to CardXX's proprietary technology that includes, among other things, "a low temperature/low pressure molding process, also referred to as a reaction injection molding (RIM) process for making smart cards and other form factors having a top layer and a bottom layer made of polymeric materials between which a core layer of thermosetting polymeric material is injected." Docket No. 201 at 6, ¶ 13; *see also* Docket No. 300-2 at 3. Thus, CardXX's trade secrets encompass the "flush mounted" proprietary technology included within the '537 patent and the '206 Application.

The Court's August 1, 2011 Order also found that Innovatier knowingly misappropriated CardXX's trades secrets by filing Patent Application Serial No. 11/455,936 ("'936 Application"). Docket No. 316 at 8. The Court ruled that CardXX

could seek a remedy for the misappropriation of trade secrets that have subsequently become public. *Id*. Thus, Innovatier is liable for misappropriation of any of CardXX's "flush mounted" technology which Innovatier disclosed or used without consent, knowing it was obtained by improper means, before the information became publicly available.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Innovatier's Motion for Clarification or Reconsideration of Order Granting in Part and Denying in Part CardXX's Motion for Summary Judgment on its Fifth Counterclaim [Docket No. 321] is **DENIED**.

DATED February 13, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge